Good morning, may it please the Court. My name is Susan E. Hill and I represent the petitioner Mr. Rabi Abouayash. At this time, I'd like to reserve two minutes for rebuttal at the end, please. Okay. Your Honors, Mr. Abouayash should have been granted asylum, withholding of removal, and relief under the Convention Against Torture. He established that he had been persecuted in the past while living in Lebanon and that he would be persecuted in the future if he returned. The judge, admittedly below, did not specifically address whether he had been persecuted in the past, and he jumped straight to whether or not Mr. Abouayash would be persecuted in the future if he returned. However, Mr. Abouayash contends that he was persecuted in the past. Therefore, that raises a rebuttable presumption that he would have been persecuted in the future had he returned to Lebanon. According to the rebuttable presumption, it is the government's burden to rebut that presumption with a preponderance of the evidence. Here, the preponderance, excuse me, of the evidence was on Mr. Abouayash's side and not on the government's side. Therefore, the BIA erred in affirming the judge, finding that there was no likelihood of future persecution. One of the things that seemed to trouble the immigration judge, and did he not offer to let you come in with more evidence? He said he would like to see more evidence. No. I'm sorry. Okay. I just want to confirm that because he talks about the country report saying that only somebody who was high up in the organization. Your client was in the Druze militia, as I understand it. Yes, Your Honor. Looking at the report, it looks like what the reference is to, I think it's the Canadian report that he must have been referring to, talks about being high up in Hezbollah and then having left Hezbollah. Was that at all pointed out to the IJ by anybody during the course of the proceeding? I'm sorry. I didn't understand. Was what pointed out? Well, it looks like he's saying, you know, I look at this. He isn't a high up official in the militia. Therefore, the country report on its face says they're only looking for high officials. But the only thing I can see about high officials is in this Exhibit 4, I think, or 5. Yes, it was vaguely referenced in just one of the exhibits. Well, it says people at risk from Hezbollah are high-ranking party members, but I assume that's high-ranking party members in Hezbollah, is it not? Again, I wasn't sure exactly what that meant either. You weren't? The judge took it to mean that he had to be a high-ranking member of his own party, Mr. Abu Ayyash's own party, in order to come to Hezbollah's attention. However, Mr. Abu Ayyash was deemed to be credible in his testimony, and he testified that even up to the time of his individual hearing, Hezbollah was still looking for him. They knew he was in the United States, but they were still making known that they opposed his past actions and that they had him on, not in so many words, but they had him on some kind of a wanted list, and they were looking for him actively. Again, under the burden of proof, this testimony shows that he was still being targeted by Hezbollah and the evidence did not overcome with an individualized showing that Hezbollah was no longer interested in him. Moreover, he was very prominent. He'd been very politically active since the age of about 13 years old. He led students on the campus at the American University. Hezbollah knew that he went to Israel for some specific training, which they specifically objected to. And then finally, he was leader of his militia, and he was very prominent in his role acting on the front lines. I believe in testimony he stated that his Druze militia group approached him and told him that they had very few leaders and they needed leaders. Therefore, that shows that he was one of a few. And again, the threats do demonstrate that he was under the attention of Hezbollah and that he was targeted for future persecution. As to whether or not the judge mentioned that he was going to predicate his holding on that one report and the evidence, I'm not sure if that's what your question was directed at. No, I was trying to understand. I mean, the I.J. at the end says, come on back if you can persuade me otherwise. You didn't come back. And when I look at what he was looking for, it seems, well, it doesn't seem like that. He said that there was a meeting of the minds on it. Right. The judge did not indicate until his oral decision that he wanted further evidence, but it is Mr. Abu-Yash's contention that he's not required to present that further evidence. The judge did not specify. He'd rather just work his way up the appellate process and hope to win in reverse on appeal. That's the action that we're here with. I would argue he's not required to go back to the immigration judge. Again, the judge didn't specify which evidence it was that he wanted. And to tell the truth, I know as a fact that that judge was transferred out of Los Angeles shortly after that decision, so there would not have been any guarantee that that particular judge would have heard the case anyway. All right. And just to nail the issue down, Mr. Abu-Yash should not be required to proceed and forego his appellate rights based on a promise that was made. No, I wasn't suggesting. No, I'm just saying sometimes if the judge invites you to take a second bite at the apple, it may not hurt to take a second bite at the apple, but that was a strategic decision. Right. It probably does not, but that was the decision that was made here, and so here we are today. As I stated, Hezbollah had been threatening him. His family reported this to him as recently as right before his individualized merits hearing. The country reports other background documentation corroborates his testimony as laid out in the brief that Mr. Abu-Yash submitted before this Court. There are many instances in the country reports where they do indicate that people who collaborate with the Israelis, which he did by going down to get military training, people who obviously were involved in the militias and who fought against Hezbollah, but I believe here the overriding factor in this case is that he did have those threats against him as communicated to him by his family members, and nothing in the country reports contradict that those threats exist. Counsel, is your argument undercut at all by the fact that he returned in 1993 to Lebanon? No, it's not, Your Honor. He returned for 20 days roughly, and he stated that he never stayed in the same place for more than one night. He was constantly afraid while he was there, and he moved around, and he went to areas where he thought he would escape detection temporarily from Hezbollah. However, nonetheless, he did come back to the United States because he was afraid and realized he could not stay. I believe his fear was demonstrated by the fact that he came to the United States initially in 88 because he was afraid. Then he tried to return in 89. He generally did want to go back and live there in Lebanon. However, conditions did not allow him to, so he did come back to the United States. And the only reason that brought him back to Lebanon was because his father died, or was sick, and he went back for his father. And his father did eventually die. And I believe that is a compelling reason for him to return despite his fear. And like I said, his manner of living was so restricted, he could not live out in the open as a normal person, and he had to remain in hiding. I see that I have time. Go ahead. Save your time. Thank you, Your Honor. May it please the Court. My name is Molly Debeshare, and I represent Alberto Gonzalez, the respondent in this case. Good morning. There is no evidence in the record that compels the conclusion that Mr. Abouillache would be targeted for persecution by Hezbollah. None at all? No evidence in the record that compels the conclusion. Well, could you help me as I adverted? The IJ talks about this being a high-ranking officer, and I look at Exhibit 5, which appears to be the report that he's looking at, which is from the Ottawa Informational Research Branch Immigration and Refugee Board, Ottawa. And on page 114 of the record, it talks about people who are at risk from Hezbollah, and it says they are high-ranking party members who were involved in security matters for the organization, which presumably refers to Hezbollah, and later became involved in anti-Hezbollah activities. Such individuals could easily provide documents as identity cards and newspaper articles, which proved their rank in the organization, and so on. And then it goes on later in that same paragraph. It says other people at risk would be individuals who collaborate voluntarily with the Israelis, and talks about members of the SLA would also qualify in that category. And then later on at page 116, the report says people who collaborate with Israel on the basis of security and intelligence in its occupation of Lebanese territory would face serious difficulties with the Hezbollah. These people are mainly located in the south of Lebanon. Now, that seems to suggest that this individual, having gone to Israel and been trained there, and coming back, would fall within that category. But what troubles me is that the IJ seemed to think that that might well be the case, but seemed to read that statement as if he had to be a high-ranking official in the Druze militia, and that doesn't seem to be what the report says. And it seems to me that sounded like that's what the IJ was looking for. It's a little hard to understand, but seemed to be looking for Mr. Abiyash to come back with evidence that he was a high-ranking official in the militia, and that doesn't seem to be the predicate for the country report. Well, Your Honor, I think the immigration judge was trying to flesh out, trying to figure out what was the claim. And he repeatedly asked, he repeatedly asked in the hearing, he asked Mr. Abiyash, why would they go after you? Why would Hezbollah want to harm you in particular? Why would they harm you now when the civil war has been over for more than ten years? Mr. Abiyash first replied that they would go after him, that Hezbollah would go after him because he fought in a war against them. And, of course, this does nothing to show that he would be targeted for persecution. He then said, I believe they would go after me because I trained in Israel. And, in fact, Your Honor, his testimony with regard to his training was very vague. The alien has the burden of establishing his claim with specific and cogent and concise evidence. The best he was able to do. The I.J. did not say he was not credible. To the contrary, the I.J. made a point of saying he appeared credible, even as the I.J. commented that the testimony was vague. I don't know that our case law really permits him to have it both ways. He certainly did not make an adverse credibility determination. Why is it he can disregard testimony that he went to Israel for training? There was no proof that he did not do so. Your Honor, with all due respect, I don't think he disregarded that testimony. I think he did provide that. Well, then you go back to Judge Fischer's question. That may be the indicator that puts him at risk in the future, the fact that he's cooperated with Israel, which is something identified by the country report. Your Honor, excuse me. Your Honor, the immigration judge just found the testimony vague, although generally credible. And as a ---- So did you accept the factual proposition that he did, in fact, receive training in Israel? The immigration judge did accept that he received training. However, Your Honor, he was very vague in describing his training. The best he could say was he and the others were told ---- If you accept the proposition, what difference does the vagueness make? Well, the difference is ---- I doubt that Hezbollah is going to be all that concerned with exactly how he was trained by the Israelis if they're looking for people that are cooperating with Israel. The fact that he'd been to Israel for a period of time and had received training from the Israeli forces suggests that he may be tagged with somebody that cooperates with Israel. Yes, Your Honor. There's no evidence in the record that demonstrates that Hezbollah even knew that he'd been to Israel. There's certainly no evidence that he rose to a high level of Israeli intelligence. And there's no evidence. And I'll remind you that the burden is on the alien to prove his case. There's no evidence. Well, if the fact of past persecution shifts the burden, that may not be the case. Well, Your Honor ---- And I realize you inherit the brief, but the brief doesn't bother to try to deal with the possibility of past persecution except to claim that it wasn't argued to the BIA and hence was waived. And yet I look at the notice of appeal and see that it says, and specifically, he was abducted by the Hezbollah and beaten. And the brief makes similar references to how he's been persecuted already by Muslim forces in Lebanon. Well, Your Honor, if you read the brief to the Board, it's all future-looking. Well, that isn't. What I just read wasn't. He was beaten. He was abducted. That's not future-looking. That's telling the history. His argument is that if he returns, he would be ---- So the Board's allowed to disregard the fact in this very short notice of appeal and very short brief that specifically stated that the IJ didn't find otherwise, that he'd been abducted by the Hezbollah and he'd been beaten. And that's something that they can plainly disregard? Well, Your Honor, the Board will recognize arguments that are presented clearly and concisely and cogently. The Board will not recognize an argument that is mentioned in passing. The argument in this brief is clearly with regard to he will be persecuted in the future. Is there any doubt but that the argument, the IJ doesn't seem to pay much attention to it, but his recitation includes the recitation of the fact of the testimony given by Petitioner as being including the abduction and the beating and so forth. Is that correct? In his brief, Your Honor? No, in the IJ's oral decision. He makes express reference to the testimony given by the alien. Yes, he does. And the BIA's decision here was an adoption of the IJ's oral decision. And it seems to me the BIA, I don't think the Department of Justice can walk away from the fact that we have recited within the decision which the BIA has adopted the fact that this individual testified, apparently credibly, that he'd been abducted and beaten in the past. Your Honor, there was no opinion, no decision by the immigration judge that the alien had established past persecution. And in his brief to the Board, the alien did not. Okay. Then let me pose the question, how could the IJ not find that? If, in fact, the Petitioner testified to that effect, the IJ said that he was credible, and there was absolutely no evidence whatsoever to suggest that his testimony was false. The immigration judge found simply that his testimony was vague. It was not cogent. It was not concise. That was with regard to all of his testimony or that with regard to the training  That was with regard to his testimony, all of his testimony. He testified. The IJ, as you stated, Your Honor, repeated the testimony, but he said it was vague. It was – it simply didn't satisfy the burden. That doesn't work, because under our law, what the Petitioner says is entitled to be believed unless there's a determination to the contrary of the IJ. The IJ can't just close his eyes to testimony and not deal with it. Well, Your Honor, it's entitled to be believed, but it also must demonstrate that the claim is valid. Okay. Then let me ask you this. What is it about being abducted and being beaten that doesn't amount to past persecution that entitles into a presumption? Well, Your Honor, that was not the reason for rejecting the claim. Well, what's not? I didn't ask what was the reason for rejecting the claim, because that invites the IJ simply to disregard testimony that he can't reconcile. So let me ask you again. What is it about testimony by the Petitioner that he was abducted and beaten that does not justify or require a finding of past persecution? Oh, Your Honor, this Court has found many instances when treatment much more serious than that did not rise to the level of persecution. Although I don't believe that issue has been raised by the Petitioner in his brief to this Court. I believe the testimony was that he was held for an hour, a couple of hours, and this Court has found much more serious instances of detention that were not persecution. Okay. I think we have your point. Okay. I think your time is up. Did you have something else? No. For the foregoing reasons, there's no evidence in the record that compels a conclusion. You don't waive any. You don't have to recite for the foregoing reasons we asked the Court to. We know what you're asking for, so. Okay. Thank you very much. Just to be clear, Mr. Agbroyage did raise the fact that he was persecuted in the past in his opening brief before this Court. Down below, I believe that the government argued that he failed to raise it, but as Your Honor pointed out, there are real instances. Well, they argue it here, too. And in fact, I'll turn it around and say it is true in the appellate brief and his notice of appeal. He makes reference to his history, but the argument that's made doesn't present the challenge I just posed to the government. It doesn't say that because of the past persecution that there's a presumption of well-founded fear. Right. But I would also argue that an applicant should not have to take the judge or the BIA by the hand, in this case it was the BIA, and lead them through the legal analysis that they are required to perform in order to review a judge's determination. Well, counsel, come on now. Good, competent counsel will lay out what the law is. Yes. You're not just saying it's not leading them through the hand. They need to know where you think the legal error is. Right. And here they did, the BIA brief did reference the definition of a refugee, and there was a holding by the IJ that there was no future persecution. Hence, in order to review that decision, the BIA needed to know who had the burden of proof of establishing the likelihood of a future persecution. Well, I hope you're not defending that kind of advocacy as the hallmark of good advocacy. I'm not making a comment on the advocacy, Your Honor. I'm just saying here that it was sufficiently raised because the BIA inherently had to address whether they are looking at a rebuttable presumption of future persecution or whether it was Mr. Abu Ayyash's burden solely to establish future persecution. It's similar to cases this Court has as far as when an applicant states that he or she met their burden of showing an asylum claim, but yet failed to specifically address the credibility issue. However, in addressing whether a person met their burden, the BIA inherently has to address credibility of testimony. Therefore, this is the same situation. And finally, I have 10 seconds left. I'd just like to point out. No, you're, you're, you're, now you're, see, now it's 15 seconds. Oh, I apologize. That's okay. Make one quick statement. Oh, I was just going to point out that it only matters whether Hezbollah believed Mr. Abu Ayyash went and got training in Israel, not what that exact training was. All right. Thank you very much. All right. Counsel, thank you. The case argued is submitted.
judges: Fisher, Clifton, Martinez